IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,              :

            Plaintiff,

                                   :          Case No. 3:09-cr-165
        v.                                   :
                                             JUDGE WALTER H. RICE

MICKEY FUGATE,

            Defendant.              :

---

DECISION AND ENTRY, ON REMAND, OVERRULING PREVIOUS
DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE (DOC. #35); DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE (DOC. #21) OVERRULED

---

Defendant Mickey Fugate was indicted in connection with the armed robbery

of a convenience store.  This Court previously sustained his motion to suppress all

evidence seized following a warrantless entry onto the curtilage surrounding

Defendant's girlfriend's house, in which Defendant was found to have a legitimate

expectation of privacy.  The Court found that, because the initial entry violated

Defendant's Fourth Amendment rights, all observations made as a result of that

entry were fruit of the poisonous tree.  The Court further found that the

constitutional violation was not purged by the later issuance of a search warrant,

since the supporting affidavit was based on illegally obtained evidence from the

warrantless entry onto the curtilage.  Doc. #35.  This matter is currently before the

Court on remand from the Sixth Circuit, following an appeal by the Government.

The relevant facts may be summarized as follows. A lone gunman shot a convenience store clerk in Dayton, Ohio, stole money from the cash register, and drove away in a black, 2-door Cadillac with no visible license plates. Citizens who observed the robbery followed the gunman for several minutes, and kept a Dayton police dispatcher advised of their whereabouts. The gunman appeared to be circling a small area of East Dayton. The dispatcher relayed this information to Dayton police officers. When the gunman started shooting at the people who were following him, it forced them to abandon their chase.

Dayton Police Officer Michael Saylors was one of the officers searching for the gunman. Approximately 30 minutes after the robbery had occurred, and approximately 15 minutes after the citizens had abandoned their chase, Saylors was driving through an alley near the area where the gunman was last seen. From the alley, he could see that a dark-colored car was parked in the back yard of a house located at 140 Drummer Avenue. It caught his eye because instead of being parked on the concrete parking area adjacent to the alley, the car was parked between the back of the house and a large above-ground swimming pool. From the alley, only the top 12-18 inches of the vehicle were visible. This made it impossible for him to identify the make or model of the car or, for that matter, to determine whether the vehicle had visible license plates.

Finding the car's location rather suspicious, Saylors decided to take a closer look. He entered the back yard, which was fenced in on three sides, but open at the back off the alley. Once he walked around the swimming pool, he able to see that the car was, in fact, a black 2-door Cadillac, with no visible license plates. The driver's door was open and, on the ground nearby, he saw some money and a cash register drawer. Based on these observations, he called for police backup.

When other officers arrived, they knocked on the doors of the house and announced their presence, but no one answered. Believing that there could be hostages inside, they entered the house through an open window at the back of the house and found Defendant Mickey Fugate. After taking him into custody, they conducted a protective sweep of the house, during which they noticed a blue sweatshirt and a green mask resembling the clothes worn by the alleged gunman. They secured the house and, based on their observations, obtained a search warrant. They then seized the incriminating evidence, including a 9 mm pistol.

Defendant was charged with a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant moved to suppress the evidence, arguing that the search violated his Fourth Amendment rights.

In sustaining Defendant's motion to suppress, the Court concluded that: (1) Saylors's warrantless entry into the back yard of the residence, for the purpose of conducting a criminal investigation, violated Defendant's Fourth Amendment rights; (2) the plain view exception to the warrant requirement was inapplicable; (3) the exigent circumstances exception to the warrant requirement did not justify the warrantless entry into the house; and (4) the "good faith" exception to the exclusionary rule, as set forth in *United States v. Leon*, 468 U.S. 897, 923 (1984), did not apply because, once the illegally obtained information was excluded from the search warrant affidavit, the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

The Government appealed. On appeal, the Sixth Circuit affirmed the Court's finding that the warrantless entry into the back yard violated Defendant's Fourth Amendment rights. It then turned to the question of whether the good faith exception to the exclusionary rule might nevertheless be applicable. The court noted that there was conflicting authority, even within the Sixth Circuit, concerning whether the good faith exception can ever be applied when officers act pursuant to a search warrant obtained through information gained during an illegal predicate search.

In *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005), the Sixth Circuit stated in dicta that "we agree with numerous other circuits that have held

that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure." However, in *United States v. McClain*, 444 F.3d 556 (6th Cir. 2006), the court later held that, even if the warrant is based on an illegal predicate search, the good faith exception may apply in "unique cases" where "the facts surrounding the initial Fourth Amendment violation were 'close enough to the line of validity to make the officer's belief in the validity of the warrant objectively reasonable.'" *Id.* at 565-66 (quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989)).

The Sixth Circuit found that it was bound by *McClain.* It then discussed recent Supreme Court cases that had narrowed the scope of the exclusionary rule. In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court noted that "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id.* at 137. "[T]he benefits of deterrence must outweigh the costs" of letting criminals go free. *Id.* at 141. Therefore, even assuming a Fourth Amendment violation, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Only

evidence obtained as a result of "deliberate, reckless, or grossly negligent conduct" is subject to suppression. *Id.* at 144.[1]

In *Davis v. United States*, 131 S.Ct. 2419 (2011), a later, but different case arising from the Eleventh Circuit, the Supreme Court reiterated that the "deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Id.* at 2427 (quoting *Herring*, 555 U.S. at 143)). *See also United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (discussing the balancing test whereby a court can suppress evidence, following a Fourth Amendment violation, if the benefits of deterrence outweigh the costs).

Because the parties had not yet briefed this particular issue, the Sixth Circuit remanded the case for further consideration. On remand, the parties agreed that no further evidentiary hearing was needed. They filed supplemental briefs, and the Court held oral argument on March 28, 2013.

III.

The Fourth Amendment establishes the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. To protect that right, the judicially-created exclusionary rule "forbids the use of improperly obtained evidence at trial."

---

[1] The relevant question is not whether the conduct itself was "deliberate, reckless, or grossly negligent," but, rather, whether the conduct involved a "deliberate, reckless, or grossly negligent" violation of an individual's constitutional rights.

*Herring*, 555 U.S. at 139.  Normally, under the "fruit of the poisonous tree"
doctrine, all derivative evidence flowing from an illegal search or seizure should
also be suppressed.  *McClain*, 444 F.3d at 564.

As the Supreme Court noted in *Davis*, however, the sole purpose of the
exclusionary rule is deterrence.  131 S.Ct. at 2426.  The rule has never been
applied "to suppress evidence obtained as a result of nonculpable, innocent police
conduct."  *Id.* at 2429.  When an officer acts with an objectively reasonable good-
faith belief that his or her conduct is lawful, exclusion is not justified because
"suppression would do nothing to deter police misconduct in these circumstances."
*Id.* at 2423.  Unless suppression yields "appreciable deterrence," exclusion is not
warranted.  *Id.* at 2426-27 (quoting *United States v. Janis*, 428 U.S. 433, 454
(1976)).  "[E]vidence should be suppressed 'only if it can be said that the law
enforcement officer had knowledge, or may properly be charged with knowledge,
that the search was unconstitutional under the Fourth Amendment.'"  *Illinois v.
Krull*, 480 U.S. 340, 348-49 (1987) (quoting *United States v. Peltier*, 422 U.S.
531, 542 (1975)).  Therefore, the relevant question is "'whether a reasonably well
trained officer would have known that the search was illegal' in light of 'all of the
circumstances.'"  *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23).

Notably, in each case where the Supreme Court has applied a "good faith"
exception to the exclusionary rule, the police officer conducted a search in reliance
on a *third party's* determination about the constitutional validity of a search or

7

seizure. *See Leon*, 468 U.S. at 922 (refusing to apply the exclusionary rule when the police conducted a search in "objectively reasonable reliance" on a facially valid warrant that was later determined to be unsupported by probable cause); *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (holding that because officer reasonably relied on a magistrate judge's opinion concerning the validity of a search warrant application form, the exclusionary rule was inapplicable); *Krull*, 480 U.S. 340 (1987) (refusing to apply exclusionary rule where officer obtained evidence pursuant to state statute later held to be unconstitutional); *Davis*, 131 S. Ct. at 2423 (refusing to apply the exclusionary rule to suppress evidence from a search conducted in reliance on binding precedent, later overruled); *Herring*, 555 U.S. at 145-46 (refusing to suppress evidence obtained during a search incident to an arrest where, unbeknownst to the officers, the arrest warrant had been recalled).[2]

In *McClain*, the Sixth Circuit further narrowed the scope of the exclusionary rule by applying a "good faith" exception to a case where the officer relied, not on a *third party's* erroneous interpretation of the law, but on his or her *own* erroneous interpretation of the Fourth Amendment. The facts in *McClain* were as follows.

---

[2] For a more detailed discussion of these cases, *see* Andrew Z. Lipson, *The Good Faith Exception as Applied to Illegal Predicate Searches: A Free Pass to Institutional Ignorance*, 60 Hastings L.J. 1147, 1148 (2009).

Neighbors called the police to report that lights were on in a vacant house. The police found the front door slightly ajar, but no sign of a forced entry. They knocked and announced their presence, but no one answered the door. They entered without a warrant, thinking a burglary might be in progress. While inside, they observed evidence of a marijuana-growing operation. Based on those observations, they obtained a search warrant and seized many marijuana plants.

The district court granted defendants' motion to suppress the evidence obtained as a result of the initial warrantless search, but the Sixth Circuit reversed. The court agreed that "there was neither probable cause nor exigency to justify the warrantless search." *McClain*, 444 F.3d at 559. It nevertheless concluded that "this is one of those unique cases in which the *Leon* good faith exception should apply despite an earlier Fourth Amendment violation." *Id.* at 565.

Quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989), the Sixth Circuit found that an "objectively reasonable officer" could have believed the initial warrantless entry to be valid, and that the facts surrounding that search were "close enough to the line of validity to make the officer's belief in the validity of the warrant objectively reasonable." *McClain*, 444 F.3d at 566. The court also noted that the facts surrounding the initial warrantless entry had been fully disclosed to the magistrate who issued the search warrant. *Id.* The court concluded that even though the warrants on which the officers relied were

"themselves the fruit of the poisonous tree," *id.* at 565, the exclusionary rule did not apply.

As the Sixth Circuit later noted in *Master*, "the decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred." 614 F.3d at 242. Using the "balancing test" established in *Herring*, the court must weigh the benefits of deterrence against the cost of excluding the evidence. In *Master*, the Sixth Circuit interpreted *Herring*'s emphasis as being "weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Id.* at 243 (quoting *Herring*, 555 U.S. at 144)).[3]

## IV.

The Fourth Amendment's prohibition of unreasonable searches extends to the "curtilage," the area immediately surrounding a home. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (holding that the curtilage "enjoys protection as part of the home itself"). Moreover, "[b]ecause a criminal investigation is viewed as among the most intrusive actions a government may take against an individual,

---

[3] As previously noted, the relevant question is whether the constitutional violation, rather than the conduct itself, was "deliberate, reckless, or grossly negligent."

the Fourth Amendment accordingly offers a particularly strong shield against such investigations." *Jacob v. Twp. of West Bloomfield*, 531 F.3d 385, 389 (6th Cir. 2008). "[A]bsent exigent circumstances, government officials may not conduct a criminal investigation within the curtilage of a person's home without a warrant." *Id.* at 391 (internal quotation omitted).

It is undisputed that Officer Saylors breached the curtilage when he entered the back yard of 140 Drummer Avenue to see if the car parked between the house and the swimming pool was the car used in the armed robbery. The Court has already determined that this warrantless entry violated Defendant's Fourth Amendment rights, and the Sixth Circuit did not disturb that finding. Accordingly, the question, at this point, is no longer whether the warrantless entry was unconstitutional.

Instead, the question is whether Officer Saylors's warrantless entry was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. If the warrantless entry was "close enough to the line of validity" to make his conduct objectively reasonable, the exclusionary rule does not apply. *McClain*, 444 F.3d at 566.

Relying heavily on *McClain*, the Government argues that application of the exclusionary rule is not warranted here because: (1) the nature of the intrusion was slight; and (2) the conduct at issue was objectively reasonable. The Government

11

maintains that Officer Saylors's conduct is not sufficiently culpable to justify the cost of excluding the evidence. Upon further review of the relevant case law, the Court agrees.

As to the nature of the intrusion, the Government notes that the back yard was enclosed on three sides, but open off the alley. Officer Saylors walked from the alley into the back yard just far enough to determine whether the car, which was only partially visible from the alley, matched the description of the getaway car. Although the curtilage is entitled to Fourth Amendment protection "as part of the home itself," *Jardines*, 133 S. Ct. at 1414, a search of the curtilage, both generally and in this instance, is not as intrusive as a search of the interior of a house.

In this case, the limited nature of Officer Saylors's intrusion into the back yard is relevant to the question of his culpability, and may be considered as a factor in the determination of whether evidence obtained as a result of the illegal predicate search should be subject to the exclusionary rule. The Government maintains that it was objectively reasonable for Officer Saylors to believe that, under the circumstances presented here, his limited entry into the back yard was legally permissible either: (1) pursuant to the "knock and talk" doctrine; or (2) because exigent circumstances existed.

Under the "knock and talk" doctrine, police officers are permitted to approach a house without a warrant to initiate a conversation with a suspect or

12

with someone else who may have information about a criminal investigation. *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). *See also Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006). Under the circumstances presented here, however, the applicability of the "knock and talk" doctrine is questionable.

It is undisputed that there is no door located at the back of the house at 140 Drummer Avenue, and no one was visibly present in the back yard. More importantly, Saylors, in fact, testified that he entered the back yard in order to determine whether the car, which was only partially visible from the alley, might be the getaway car: "I exited my cruiser, walked up to the Cadillac to see and I saw – what I saw was no plate, believing that this was the black Cadillac that was being chased." Hr'g Tr. at 11. Until he saw that the car matched the description of the getaway car, he would have had no particular reason to question the car's occupants.[4]

---

[4] The Government maintains that Saylors approached the car to see if the driver was still in the vehicle. It notes that Saylors testified that when he entered the back yard, "[m]y intentions were to look at the car because I'm not for sure if the guy's still in it or not." Hr'g Tr. at 46. Saylors made this statement in the context of explaining why, when he first entered the back yard, he did not notice that the window at the rear of the house was open. Understandably, once Saylors realized that this was the vehicle driven by the armed robber, he was concerned about his own safety, particularly if the driver was still in the vehicle. There is no reason to believe, however, that Saylors entered the back yard for the express purpose of initiating a conversation with the car's driver.

13

Nevertheless, the Court finds that Saylors had an objectively reasonable belief that exigent circumstances existed, excusing the need for a search warrant. "The exigent circumstances exception relies on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant." *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990). "[T]he critical time for determining whether any exigency exists is the moment the officer makes the warrantless entry." *United States v. Johnson*, 256 F.3d 895, 907 (9th Cir. 2001).

The Sixth Circuit has recognized four situations that may constitute exigent circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). The Government argues that Saylors could have reasonably believed that the first and fourth situations applied to justify his warrantless entry into the back yard. The Court agrees.

True, this is not a typical "hot pursuit" case. The Supreme Court has noted that there is no "hot pursuit" unless there is "immediate or continuous pursuit of the [suspect] from the scene of a crime." *Welsh v. Wisconsin,* 466 U.S. 740, 753 (1984). *See also United States v. Lindsay*, 506 F.2d 166, 173 (D.C. Cir. 1974) ("Speed and continuous knowledge of the alleged perpetrator's whereabouts" are key elements of hot pursuit). "Typically, hot pursuit involves a situation where a

14

suspect commits a crime, flees and thereby exposes himself to the public, attempts to evade capture by entering a dwelling, and the emergency nature of the situation necessitates immediate police action to apprehend the suspect."

*Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005).

In this case, there was no continuous pursuit of the suspect from the scene of the crime. Although citizens followed the robber for several minutes, they eventually abandoned the chase because he was shooting at them.[5] Police continued looking for the getaway car in the general vicinity of where the car was last seen, but Saylors was not in "hot pursuit" when he made the decision to enter the back yard to see if the suspiciously-parked car was the getaway car.

Nevertheless, Saylors discovered the car just 30 minutes after the robbery had occurred, and just 15 minutes after the citizens had abandoned their chase. At the time, he was still actively searching for the getaway car and, in fact, found it within a half-mile of where it had last been seen. Hr'g Tr. at 8-10. Since such a short time had elapsed and the robber had been seen circling a small area of east

---

[5] In this respect, the case is distinguishable from *United States v. Bass*, 315 F.3d 561 (6th Cir. 2002), and *Warden v. Hayden*, 387 U.S. 294 (1967), cases relied upon by the Government. In *Bass*, a witness reported that an armed gunman had just shot at two people and then fled into an upstairs apartment. In *Hayden*, witnesses reported that they had followed an armed robber and watched him enter a house. In each case, the police arrived at the scene within a couple of minutes after the crimes were committed, and entered the identified dwellings to search for the gunmen. In each case, exigent circumstances were found to justify the warrantless entries.

Dayton, it was objectively reasonable to believe that the car was still in the immediate area. In fact, Saylors testified that, in his experience, "whenever somebody's circling an area, that means that they're trying to get home." *Id.* at 51. Under these circumstances, although the "hot pursuit" exception to the warrant requirement did not apply, the warrantless entry, based on all the facts and circumstances, is "close enough to the line of validity" to make his conduct objectively reasonable.

Even more so, it was objectively reasonable for him to believe that the public safety exception to the warrant requirement might apply, since there was an ongoing risk of danger to the police or others. Notably, in determining whether exigent circumstances exist, the gravity of the underlying offense is a factor to be considered. As a general rule, police are given more leeway when the crime is serious and public safety is a concern. *Welsh,* 466 U.S. at 750. In this case, there is no doubt that the crimes that had been committed were serious. The suspect had shot a convenience store clerk during the course of an armed robbery, and then shot at the citizens who were following him as he attempted to escape. Since the suspect was armed and dangerous, public safety was clearly a concern, and Officer Saylors could have reasonably believed that this excused the warrant requirement.

As the Government notes, the Sixth Circuit recently applied the "public safety" exception in the case of *United States v. Daws*, 711 F.3d 725 (6th Cir.

16

2013). In *Daws*, a person told police that he had just been robbed at gunpoint by two men, one whom the victim knew to be Kevin Daws. Daws had threatened to return to shoot the victim if he called the police. While the police were interviewing the victim, they received word that Daws and his accomplice had gone to another house asking for a place to hide the weapon.

Because Daws had an extensive criminal history, police were familiar with him, and decided to go to his house to apprehend him. They approached his house silently and, when they arrived, they saw a man sitting outside, crying and talking on the phone. They overheard him say that he and Daws had "done something bad." After the police questioned him, he told them that Daws was inside. They entered the house, arrested Daws and, during a protective sweep, found a shotgun. Daws filed a motion to suppress the evidence.

The District Court and the Sixth Circuit both found that a public safety exigency justified the warrantless search and seizure. Daws had committed a serious crime, and had threatened people with a shotgun. Police were worried that, if they took time to get a warrant, Daws would either escape or would follow through on his death threats. The Sixth Circuit noted that, in some cases, the fact that shots were fired was enough to create an exigency. In this respect, the officers and the public faced an immediate risk. *Id.* at 728. Because two hours had passed between the time of the robbery and the warrantless search, the court

17

acknowledged that this was not a case of "hot pursuit," but found that the key exigency was a concern for public safety.  *Id.*

In a similar vein, in this case, the suspect had committed a serious crime. Only 30 minutes had passed since the armed robbery, and only 15 minutes had passed since he had last fired shots at the citizens who tried to follow him.  Public safety was clearly an ongoing concern.  Moreover, although there was no evidence specifically linking the suspect to the house at 140 Drummer Avenue, Officer Saylors knew that the suspect had last been seen in the same general vicinity just 15 minutes earlier and, since the car had been circling a small area of town, it was objectively reasonable for the officer to believe that the car was still in that area. He was actively looking for the black, two-door Cadillac when he spied a dark-colored car parked in a suspicious manner in the back yard of the house.  Under the circumstances presented here, it was objectively reasonable for Officer Saylors to believe that he could enter the back yard without a warrant to see if the car matched the description of the getaway car.

In addition, in the Court's view, the reasons for applying the "good faith" exception to the exclusionary rule are even more compelling in this case than they were in *McClain.*  The warrantless entry into the back yard in this case was much less intrusive than the warrantless entry into the house in *McClain.*  Public safety was also a much bigger concern in this case because the suspect was clearly

armed and dangerous.  In contrast, in *McClain*, the officers merely suspected a burglary in progress; there was no evidence that the burglar had any weapons.

Under the circumstances presented here, Officer Saylors could have reasonably believed that the exigency of the situation justified the minimal intrusion onto the curtilage, and there is no evidence that he knew that his conduct was unconstitutional.  As in *McClain*, the warrant affidavit "fully disclosed . . . the circumstances surrounding the initial warrantless search."  444 F.3d at 566.

Defendant argues that the statement that "Officer Saylors located a vehicle matching the description of the suspect vehicle," implies that the vehicle was in plain view when, in fact, only a small portion of the car could be seen from the alley.  If the affidavit said no more, it could appear that the officers were trying to cover up their unconstitutional conduct.  But the affidavit also states that the vehicle "was parked in the backyard [sic] in between an above ground pool and the residence" and that "[t]his caught Officer Saylors [sic] attention since vehicles are not normally parked in a yard up near a house in this manner."

V.

The Court finds that the facts surrounding Saylors's initial warrantless entry into the back yard are "close enough to the line of validity" to justify application of the good faith exception to the exclusionary rule.  Given the circumstances, Saylors's conduct is not "sufficiently deliberate that exclusion can meaningfully

deter it." Nor is it "sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Even though his conduct violated Defendant's Fourth Amendment rights, it was not "deliberate, reckless, or grossly negligent" in nature.

Indeed, Officer Saylors's conduct was objectively reasonable under all the circumstances. Based on the temporal and physical proximity to the crime, and on the suspicious way the car was parked between the house and the pool, he had a strong suspicion that this could be the getaway car. However, his view of the car from the alley was obscured, and he had no other evidence linking the robber to this particular house. Because he lacked probable cause to support the issuance of a search warrant, prior to entering the curtilage, any attempt to obtain one would have been useless.[6]

Yet Officer Saylors knew that an armed robber was still on the loose and had last been seen in this immediate vicinity. Public safety was in jeopardy. He therefore made a minimal intrusion into the back yard of the house to see if the car matched the description of the getaway car. Under the circumstances presented

---

[6] Likewise, calling for backup officers to cordon off the area around the house would have been premature, given that he had not yet determined that this was the getaway car. Of course, the officer could have waited for an indeterminate amount of time for someone to exit the house, in order to question that person about the make and model of the car, and the presence of license plates. However, by that time, if it turned out that this was not the getaway car, the robber may be miles away, placing valuable evidence beyond the reach of law enforcement.

here, excluding the evidence would have no appreciable deterrent effect. In the Court's view, it is likely that most law enforcement officers, presented with the same situation, would do exactly what Officer Saylors did.

The cost of excluding the evidence in this case would be great and the deterrent effect would be minimal. The Court therefore overrules its earlier decision sustaining Defendant's Motion to Suppress, Doc. #35. Defendant's Motion to Suppress, Doc. #21, is overruled.


Date:  June 24, 2013                    _____
                                        WALTER H. RICE
                                        UNITED STATES DISTRICT JUDGE